

| | | |
|---|---|---|
| **PORTLAND MAIN OFFICE**<br>1000 SW Third Avenue, Suite 600<br>Portland, Oregon 97204<br>(503) 727-1000<br>*www.usdoj.gov/usao/or*<br><br>Quinn P. Harrington<br>Assistant U.S. Attorney<br>Quinn.Harrington@usdoj.gov<br>(503) 727-1000<br>*Reply to Portland Office* | **U.S. DEPARTMENT OF JUSTICE**<br>United States Attorney's Office<br>District of Oregon<br>Natalie K. Wight<br>United States Attorney | **EUGENE BRANCH**<br>405 E 8th Avenue, Suite 2400<br>Eugene, Oregon 97401<br>(541) 465-6771<br><br>**MEDFORD BRANCH**<br>310 West Sixth Street<br>Medford, Oregon 97501<br>(541) 776-3564 |

September 25, 2023

Mr. Wayne Mackeson
Wayne Mackeson PC
714B Main St Ste 201
Oregon City OR 97045

      Re:    *United States v. Jiang Yu*, Case No. 3:23-cr-311 - MO
            Preindictment Plea Agreement Letter

Dear Counsel:

1.    **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant, and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement does not apply to any charges other than those specifically mentioned herein.

2.    **Charges**: Defendant agrees to plead guilty to waive indictment by a Grand Jury and to plead to Count 1 of the Information, which charges the Conspiracy to Traffic in Counterfeit Goods in violation of 18 U.S.C. § 2320(a)(1).

3.    **Penalties**: The maximum sentence is 10 years' imprisonment, a fine of $2 million, 3 years of supervised release, and a $100 fee assessment. Defendant agrees to pay the fee assessment by the time of entry of guilty plea or explain to the Court why this cannot be done. Defendant further stipulates to the forfeiture of the assets as set forth below.

4.    **Dismissal/No Prosecution**: The USAO agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

5.    **Elements and Factual Basis**: In order for defendant to be found guilty of Count One of the Information, the government must prove the following elements beyond a reasonable doubt:

Revised Aug. 2022

Wayne Mackeson
Re: Yu Plea Agreement Letter
Page 2
9/25/2023

First, beginning on or about May 1, 2020, and ending on or about June 10, 2021, there was an agreement between two or more persons to commit the crime of Trafficking in Counterfeit Goods in violation of 18 U.S.C. § 2320(a)(1); and

Second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of Trafficking in Counterfeit Goods in violation of 18 U.S.C. § 2320(a)(1) are:

First, defendants trafficked or attempted to traffic in goods or services;

Second, such trafficking, or attempt to traffic, was intentional;

Third, defendants used a "counterfeit mark" on or in connection with such goods or services; and

Fourth, defendants knew that the mark so used was counterfeit.

Defendant has fully discussed the facts of this case and any potential defenses with defense counsel. Defendant has committed each of the elements of the crime to which defendant is pleading guilty and admits there is a factual basis for defendant's guilty plea. Defendant agrees that the following facts are true, undisputed, and could be proved at trial beyond a reasonable doubt.

In or about May of 2020, defendant, in the District of Oregon, conspired with CO-CONSPIRATOR 1, CO-CONSPIRATOR 2, and CO-CONSPIRATOR 3 to import and sell N95 type masks with counterfeit marks. Defendant, and his co-conspirators, knew that the masks he intended to import used a spurious mark on the goods and packaging that was identical with and substantially indistinguishable from marks registered on the principal register in the U.S. Patent and Trademark Office and used in trafficking of genuine goods. Defendant knew the use of the spurious mark was likely to cause confusion, to cause mistake, or to deceive.

Specifically, defendant worked with CO-CONSPIRATOR 1 to import masks that came in boxes using the spurious mark "NIOSH," and masks that had the spurious mark 3M (and came in boxes with that mark). Both "NIOSH" and "3M" are active protected marks registered with the principal office of the U.S. Patent and Trademark.

Defendant worked with CO-CONSPIRATOR 2 and CO-CONSPIRATOR 3 to import and sell the counterfeit masks. During the course of the conspiracy, defendant and CO-

CONSPIRATOR 2 and CO-CONSPIRATOR 3 advised one another on the operation of their businesses, warned of potential threats from competitors and law enforcement, and engaged in frequent large quantities of sales. For example, when customers raised questions about the authenticity of products, defendant worked with CC1, CC2, and CC3 to design and edit fake certificates of authenticity to in an attempt to lull and trick purchasers about the nature of their counterfeit products.

As an example of the counterfeit sales that took place during the conspiracy, defendant worked with CO-CONSPIRATOR 1 to import masks from an unauthorized supplier that claimed to be produced by MAKRITE and contained the spurious mark "NIOSH" on the boxes. Defendant supplied these masks to CC2 and CC3. CC2 and CC3 posted videos on social media advertising the sale of the masks while falsely claiming the genuine nature of the products. For example, CO-CONSPIRATOR 3 posted an advertisement on or about June 4, 2020 for "NIOSH Approved Makrite N95 9500s . . . All test reports and certs available . . . ." On August 14, 2020, CC2 posted a video from inside defendant's garage showcasing what he described as "50,000 Makrite masks" and highlighted the marking for "NIOSH."

After questions regarding the authenticity of masks were raised, defendant worked with CC1, CC2, and CC3 to create a false document purporting to be from Makrite, and using the name Makrite, a protected mark registered with the principal office of the U.S. Patent and Trademark office. That false document claimed that Makrite was working with defendant and CC2 and CC3's company to procure "2,000,000 N95 NIOSH masks."

As another example of the counterfeit sales that took place during the conspiracy, defendant worked with CC1, CC2, and CC3 to import and sell masks from an unauthorized supplier that had the spurious mark "3M" on the packaging and on the masks themselves. Similarly, in or about February 2021, when customers began asking questions, defendant worked with CC1, CC2, and CC3 to generate false documents that purported to be from 3M to authenticate the fake products.

Defendant and his co-conspirators sold at least $2,531,857.53 in counterfeit masks to various purchasers, The majority of sales were to third-party companies, many of whom sold to healthcare providers.

6.  **Sentencing Factors**: The parties agree that the Court must first determine the applicable advisory guideline range, then determine a reasonable sentence considering that range and the factors listed in 18 U.S.C. § 3553(a). Where the parties agree that sentencing factors apply, such agreement constitutes sufficient proof to satisfy the applicable evidentiary standard.

Wayne Mackeson
Re: Yu Plea Agreement Letter
Page 4
9/25/2023

7. **Relevant Conduct and Sentencing Guidelines**: The parties agree that the sentencing guidelines apply as follows:

- Base Level 8 – Pursuant to USSG § 2B5.3
- + 16 – Infringement Amount, Retail Value of Infringed Item between $1,500,000 and $3,500,000, pursuant to USSG § 2B5.3(b)(1)
- +2 – Offense Involves importation of infringing items, pursuant to 2B5.3(b)(3)(A)
- Defendant does not agree to the application of +2 for the conscious or reckless risk of death or serious bodily injury, pursuant to 2B5.3(b)(6). Defendant understands that the Government is free to argue for this enhancement.

8. **Acceptance of Responsibility**: Defendant must demonstrate to the Court that defendant fully admits and accepts responsibility under USSG § 3E1.1 for defendant's unlawful conduct in this case. If defendant does so, the USAO will recommend a three-level reduction in defendant's offense level (two levels if defendant's offense level is less than sixteen). The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

9. **Additional Variance in Consideration of Pending Amendments to Sentencing Guidelines**:

   a. Impact of Proposed Amendments to § 4C1.1 of the Sentencing Guidelines (Effective Date of November 1, 2023):
      i. If defendant is sentenced prior to November 1, 2023, and if defendant does not receive any criminal history points and otherwise meets all of the criteria in the proposed amendments at § 4C1.1 "Adjustment for Certain Zero-Point Offenders," the government will recommend a 2-level downward variance under 18 U.S.C. § 3553(a).
      ii. If defendant is sentenced on November 1, 2023, or later, there will be no additional variance recommended by the parties pursuant to this paragraph of the plea agreement. The parties agree that should sentencing occur on November 1, 2023, the Sentencing Court will simply apply the sentencing guidelines in effect at that time, including proposed § 4C1.1 if adopted, and that neither party will seek an additional variance under this paragraph.

10. **Additional Departures, Adjustments, or Variances:**

   The USAO will recommend an additional 2-level downward variance under 18 U.S.C. § 3553(a) based on the particular facts and circumstances of this case.

   The USAO agrees not to seek any upward departures, adjustments, or variances to the advisory sentencing guideline range, or to seek a sentence in excess of that range, except as specified in this agreement. Defendant agrees not to seek any downward departures, adjustments, or variances to the advisory sentencing guideline range under the sentencing guidelines provisions. However, defendant may ask for any sentence he believes is appropriate under 18 U.S.C. § 3553.

11. **Sentencing Recommendation:** The government will recommend the low end of the applicable guideline range as long as defendant demonstrates an acceptance of responsibility as explained above.

   Defendant may ask for any sentence that he believes is appropriate.

12. **Waiver of Appeal/Post-Conviction Relief:** Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that: (1) the sentence imposed exceeds the statutory maximum, or (2) the Court arrives at an advisory sentencing guideline range by applying an upward departure under the provisions of Guidelines Chapters 4 or 5K, or (3) the Court exercises its discretion under 18 U.S.C. § 3553(a) to impose a sentence which exceeds the advisory guideline sentencing range as determined by the Court. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2). In the event that [any of] defendant's conviction(s) under this agreement are vacated, the government may reinstate and/or file any other charges, and may take any position at a resentencing hearing, notwithstanding any other provision in this agreement.

13. **Court Not Bound:** The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

Revised Aug. 2022

14. **Full Disclosure/Reservation of Rights**: The USAO will fully inform the PSR writer and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

15. **Breach of Plea Agreement**: If defendant breaches the terms of this agreement, or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea.

If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

16. **Restitution**: Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by the earlier of fourteen days from defendant's signature on this plea agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury, and provide it to both the USAO and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Defendant expressly authorizes the USAO to obtain a credit report on defendant. Defendant agrees to provide waivers, consents, or releases requested by the USAO to access records to verify the financial information. Defendant also authorizes the USAO to inspect and copy all financial documents and information held by the U.S. Probation Office.

The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

**Transfer of Assets**
Defendant agrees to notify the Financial Litigation Unit of the USAO before defendant transfers any interest in property with a value exceeding $1000 owned directly or indirectly, individually or jointly, by defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations.

**Restitution**

The Court shall order restitution to each victim in the full amount of each victim's losses as determined by the Court. Defendant agrees to pay restitution for all losses caused by defendant's conduct, regardless of whether counts of the Indictment dealing with such losses will be dismissed as part of this plea agreement. Defendant agrees that restitution will be at least $2,531,857.53 based on sales of masks to customers, but defendant understands that the Court will ultimately decide the amount of restitution. Defendant also understands that victims may come forward and have a right to request restitution as allowed by law and may do so all the way through the date of sentencing and/or restitution hearing.

Defendant understands and agrees that the total amount of any monetary judgment that the Court orders defendant to pay will be due. Defendant further understands and agrees that pursuant to 18 U.S.C. § 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine or restitution as ordered or has failed to make sufficient bona fide efforts to pay a fine or restitution. Additionally, defendant understands and agrees that the government may enforce collection of any fine or restitution imposed in this case pursuant to 18 U.S.C. §§ 3572, 3613, and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

Pursuant to 18 U.S.C. § 3612(b)(1)(F), defendant understands and agrees that until a fine or restitution order is paid in full, defendant must notify the USAO of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to 18 U.S.C. § 3664(k), defendant shall notify the Court and the USAO of any material change in defendant's economic circumstances that might affect defendant's ability to pay restitution, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts, or any other acquisition of assets or money.

17. **Forfeiture Terms:**

    A. **Assets and Authority:** By signing this agreement, defendant knowingly and voluntarily forfeits all right, title, and interest in and to all assets which are subject to forfeiture pursuant to 18 U.S.C. § 2323, including:

- 383,760 counterfeit 3M N95 MASKS;
- 164,160 EA counterfeit 3M masks;
- 51,120 EA MAKRITE counterfeit masks;
- A 2004 Lamborghini Gallardo, VIN ZHWGU11S84LA00741, its tools and appurtenances;

- A 2012 Mercedes ML350, VIN 4JGDA5HB6CA021110, its tools and appurtenances; and
- $25,913.84 in U.S. currency,

which defendant admits is any article, the making or trafficking of which is, prohibited under 18 U.S.C. § 2320; any property used, or intended to be used, in any manner or part to commit or facilitate the commission of violations referenced in Count 1; or any property constituting or derived from any proceeds obtained directly or indirectly as a result of the commission of an offense outlined in Count 1.

B. **Agreement to Civil Forfeiture**: Defendant agrees not to file a claim or withdraw any claim already filed to any of the listed property in any civil proceeding, administrative or judicial, which has been initiated. Defendant further waives the right to notice of any forfeiture proceeding involving this property and agrees not to assist others in filing a claim in any forfeiture proceeding.

C. **No Alteration or Satisfaction**: Defendant knowingly and voluntarily waives the right to a jury trial on the forfeiture of assets. Defendant knowingly and voluntarily waives all constitutional, legal and equitable defenses to the forfeiture of these assets, including any claim or defense under the Eighth Amendment to the United States Constitution, and any rights under Rule 32.2 of the Federal Rules of Criminal Procedure. Defendant further agrees forfeiture of defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon defendant in addition to forfeiture.

D. **Title Assistance**: Defendant agrees to fully assist the USAO in the forfeiture of the listed assets and to take whatever steps are necessary to pass clear title to the United States, including but not limited to surrender of title and execution of any documents necessary to transfer defendant's interest in any of the above property to the United States, and assist in bringing any assets located outside the United States within the jurisdiction of the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

E. **Assets Not Identified**: The USAO reserves its right to proceed against any remaining assets not identified either in this agreement or in the civil actions which are being resolved along with this plea of guilty, including any property in which defendant has any interest or control, if said assets, real or personal, tangible or intangible, are subject to forfeiture.

F. **Final Order of Forfeiture**: Defendant agrees not to contest entry of a Final Order of Forfeiture reflecting these forfeiture terms at the conclusion of the criminal case.

Wayne Mackeson
Re: Yu Plea Agreement Letter
Page 9
9/25/2023

18. **Memorialization of Agreement**: No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

19. **Deadline**: This plea offer expires if not accepted by October 2, 2023, at 5 p.m.

                                                          Sincerely,

                                                          NATALIE K. WIGHT
                                                          United States Attorney

                                                           **QUINN HARRINGTON** *Digitally signed by QUINN HARRINGTON Date: 2023.09.25 12:01:28 -07'00'*
                                                           QUINN P. HARRINGTON
                                                           Assistant United States Attorney

Wayne Mackeson
Re: Yu Plea Agreement Letter
Page 10
9/25/2023

    I have carefully reviewed every part of this agreement with my attorney. I understand and voluntarily agree to its terms. I expressly waive my rights to appeal as outlined in this agreement. I wish to plead guilty because, in fact, I am guilty.

_Sp/30/2023_
Date

_[signature]_
Defendant

    I represent the defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

_30 September 2023_
Date

_[signature]_
Attorney for Defendant

    I fully and accurately translated this agreement to the above-named defendant as the interpreter in this case. I fully and accurately interpreted discussions between the defendant and the attorney.

_____
Date

_____
Interpreter (if necessary)

Revised Aug. 2022